IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs May 19, 2020

## STATE OF TENNESSEE v. MICHAEL WILLIAM SHAVERS

**Appeal from the Criminal Court for Hamilton County
No. 294808    Thomas C. Greenholtz, Judge**

_____

### No. E2019-01558-CCA-R3-CD
_____

The defendant, Michael William Shavers, appeals the Hamilton County Criminal Court's order revoking his probation and ordering him to serve the balance of the 10-year effective sentence for his guilty-pleaded convictions of attempted second degree murder in confinement.  Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Criminal Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which CAMILLE R. MCMULLEN, and J. ROSS DYER, JJ., joined.

Vikki Clark, Assistant District Public Defender, for the appellant, Michael William Shavers.

Herbert H. Slatery III, Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Neal Pinkston, District Attorney General; and Cameron Williams, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

The Hamilton County Grand Jury charged the defendant with two counts of attempted first degree murder for the shootings of Ashley Harris and Joshua Maples. Pursuant to a negotiated plea agreement, the defendant pleaded guilty in June 2018 to two counts of attempted second degree murder in exchange for an effective 10-year sentence to be served on supervised probation, the conditions of which included house arrest with a 24-hour curfew and GPS monitoring.

On August 28, 2018, a probation violation warrant issued, alleging that the defendant violated the terms of his probation by failing two drug screens and failing to pay court costs and supervision fees.

At the January 2019 revocation hearing, Jennifer Sullivan, the defendant's probation supervisor, testified that the defendant had failed two drug screens in a six-month period. On July 6, 2018, the defendant tested positive for Xanax and marijuana. At that time, the defendant admitted having used both substances and explained that "he had been stressed out." As a result of the positive drug screen, the defendant was "sanctioned . . . to another drug screen in 30 days." On August 27, 2018, the defendant tested positive for marijuana, and he admitted having used marijuana one week prior to that test. The defendant's positive drug screens were the sole basis for the probation violation report.

During cross-examination, Ms. Sullivan stated that she began supervising the defendant in August of 2018, and in July 2018, her partner supervised the defendant. Ms. Sullivan was, however, present for the defendant's July drug test. Although some defendants are referred to a forensic social worker upon a failed drug screen, Ms. Sullivan stated that her partner "just sanctioned" the defendant in July. Ms. Sullivan did not discuss any substance abuse treatment programs with the defendant during her time as his probation supervisor. Other than the failed drug screens, the defendant was compliant with the conditions of his probation. Upon questioning by the court, Ms. Sullivan stated that the defendant had not asked for any sort of substance abuse treatment.

The defendant testified that when he first began his probationary sentence, he was living with a cousin, but he later moved in with an aunt, where he lived for approximately one month. He acknowledged that he told his probation officer that his aunt had told him to move out but that the real reason he wanted to leave his aunt's house was "that I had to get away because of the drugs, because I was around it and I was using. So I asked to move to my mom's so I could get away from everything, so I could just be away." After leaving his aunt's house, he moved in with his mother.

When asked if he had previously had a drug abuse problem, the defendant responded, "I mean, I smoke weed, yeah." He acknowledged having smoked marijuana since he was 15 years old. He stated that he had asked his prior attorney about a modification to the terms of his probation that would allow him to leave the house for work "to be able to keep busy so I wasn't just sitting around all day long not doing nothing, and that I could provide myself with my own income to be able to get my own place so I can be able to control my own environment." He was arrested on the present probation violation before he heard back from his attorney about the matter. He had previously held full-time jobs with a moving company, a subcontractor, and a factory. The defendant stated that if he were permitted to remain on supervised probation, he would seek substance abuse treatment and continue to attend the required victim impact classes.

During cross-examination, the defendant admitted that he smoked marijuana one month after beginning his probationary sentence despite knowing that it was a violation of his conditions. While living at his aunt's house, he smoked marijuana "[a]bout three times a week" and used Xanax without a prescription "[j]ust once." After his first failed drug test, his probation supervisor warned him to stop using marijuana and Xanax. Although he stopped using Xanax, the defendant smoked marijuana twice more beginning approximately two weeks after the July drug test. He denied smoking marijuana while living with his mother.

He acknowledged having a bad "drug habit" of abusing marijuana. He recalled telling the presentence investigator that he had "experimented with [marijuana] in high school" and that he had no history of substance abuse or drug addiction. He acknowledged that he was not truthful in his responses to the presentence investigator.

On redirect examination, the defendant stated that he minimized his substance abuse issues during the presentence investigation because "I was afraid that if they knew that I'd used marijuana that [the court] wouldn't pass judgment" and accept the plea agreement. He stated that he attended victim impact classes weekly but was otherwise at home with "idle hands" during his probation.

After the close of evidence, the trial court took the matter under advisement. The court later granted the defendant's motion to reopen the proof after an updated risk and needs assessment was completed for the defendant.

At a July 2019 continuation of the revocation hearing, Michelina Ralston, the probation officer who had compiled the defendant's original presentence report, described the Strong-R assessment as "an in-house tool that probation uses so as not to over supervise[] or under supervise a client." She gathered the information for the assessment by interviewing the defendant. Although she took notes during interviews, the assessment system required that she choose responses from pre-selected options, requiring her to "use the closest response you can." Based on her presentence investigation, she stated that the probation office could appropriately supervise the defendant. Although she wrote in the defendant's presentence report that the defendant had no history of drug abuse, she recalled that the defendant had reported specifically "no history of illegal drug use" either in the past or at that time. Ms. Ralston explained that the probation office has "a sanctioning process" for first-time violations. "Anything that doesn't warrant a zero tolerance violation we would attempt to deal with internally through a sanction."

During cross-examination, Ms. Ralston maintained that during the defendant's presentence investigation interview, she had asked him about any illegal drug use, not just abuse. She reiterated that the defendant had stated that he had never used

illegal drugs, and she acknowledged that a portion of the Strong-R assessment relies on the defendant's responses regarding drug use. She stated that the Strong-R assessment "could have" been different had the defendant been honest about his drug use during the interview. Upon questioning by the court, Ms. Ralston stated that the defendant had three Strong-R assessments; the first in May 2018, the second in June 2018, and the third in January 2019. She explained that the defendant's risk level increased from low to moderate from the first to the second assessment because the first did not take into account the underlying convictions. The third assessment identified the defendant as posing a high risk of violence.

On redirect-examination, Ms. Ralston testified that the first Strong-R assessment from May 2018 erroneously stated that the defendant had first used drugs or alcohol at age 18 or greater, where it should have reflected that the defendant had "never used alcohol or drugs." She explained that the assessment does not always have "an exact answer" in its preset options, and "you have to just select the best one." She stated that her "best guess" as to why the defendant's risk for violence was elevated from one assessment to the next was "[t]he reported d[r]ug use and the instant offense going to a prior offense"; but she acknowledged that she did not "specifically know how [the reported drug use] may have affected" the outcome of the assessment. She stated that the probation office could increase drug testing and reporting if indicated by the assessment.

Kimberly Versetto testified that she conducted the defendant's Strong-R assessments of June 2018 and January 2019. She recalled that during the June assessment, the defendant reported marijuana use beginning at age 15 and brief use of pills. Ms. Versetto stated that she does not make recommendations regarding an offender's supervision; she only provides the assessment to the supervising officer.

During cross-examination, Ms. Versetto stated that while interviewing the defendant for the June assessment, the defendant indicated that he had used drugs in his lifetime, but not in the six months prior to the interview; he did not indicate that he had an alcohol problem. The defendant explained to Ms. Versetto that "he was around a bad group of people and that contributed to the drug use during his lifetime." The defendant also reported that "he had a supportive family and that he was trying to get away from the . . . group of friends that were a negative influence." She acknowledged that the probation office was not previously aware of any potential drug use problem with the defendant. In the interview, the defendant also reported four disciplinary write-ups for non-violent infractions during a period of incarceration, which write-ups, Ms. Versetto stated, would likely affect the risk assessment. When recounting the details of the underlying offense in this case, the defendant described shooting a man with whom his fiancée was cheating, but he did not mention shooting the female victim.

Ms. Versetto also conducted the January 2019 assessment in which the defendant reported for the first time that he had used alcohol in his lifetime and that alcohol use had disrupted his education, contributed to employment issues, caused physical problems and antisocial behaviors, and contributed to the underlying conviction in this case. The defendant also reported one violent prison infraction during the time that he was incarcerated on the present probation violation. During the January interview, the defendant admitted shooting both of the victims in the underlying offense and, for the first time, he stated that his alcohol problem contributed to his having committed the offense. The defendant also stated that the motivation for his threatening behavior was "power, dominance, or control," impulsivity, retaliation and vengeance, reaction to conflict and stress, and chemically-induced violent behavior; whereas in the June assessment, he attributed his threatening behavior solely to "impulsive acts and reaction to conflict and stress."

The January 2019 Strong-R assessment indicated that the defendant posed a high risk for violence, whereas the assessment of May 2018 indicated a low risk, and the June 2018 assessment indicated a moderate risk. Ms. Versetto made an "educated guess" that the differences in the risk assessments could be attributed to the defendant's having "provided more information the last most recent time it was done in January 2019," the violent prison infraction, and the underlying convictions being reported as prior violent felonies, which was not the case in the May and June assessments.

On redirect examination, Ms. Versetto acknowledged that during the June 2018 interview, the defendant never stated that he had not consumed alcohol; rather, he stated that he drank alcohol at age 21. Ms. Versetto recalled the defendant's description of the events of the underlying offense during the June interview: "he caught his fiancée with another man and used a weapon to shoot at his truck to scare him with a gun and that he had got hit and he's still alive." The defendant gave "more information" during the January interview, stating that his fiancée "told me she was pregnant but then she posted pictures drinking and I thought she was trying to kill my child and was using Xanax," and while "he was at Waffle House [he] tried to scare [the victims] and ended up hitting them around midnight." Upon questioning by the court, Ms. Versetto clarified that the defendant admitted having been under the influence of alcohol at the time of the offense.

The trial court again took the matter under advisement, and in its August 2019 written order, the court found that the defendant violated the terms of his probationary sentence and ordered the defendant to serve the remainder of his sentence in confinement. Specifically, the court found that the defendant's admitted use of illegal substances constituted substantial evidence of his having violated the terms of his probation. In determining that execution of the sentence was the proper consequence to the violations, the trial court considered "the serious nature of the conduct[;] the [d]efendant's failures on

-5-

probation; the recency of the violation after his release; the failure of lesser sanctions to ensure future compliance; and his record of dishonesty before the [c]ourt" to be of particular concern.

In this timely appeal, the defendant argues that the trial court abused its discretion by ordering him to execute his sentence.

The accepted appellate standard of review of a probation revocation is abuse of discretion. *See State v. Shaffer*, 45 S.W.3d 553, 554 (Tenn. 2001); *see also State v. Reams*, 265 S.W.3d 423, 430 (Tenn. Crim. App. 2007). Generally, "[a] trial court abuses its discretion when it applies incorrect legal standards, reaches an illogical conclusion, bases its ruling on a clearly erroneous assessment of the proof, or applies reasoning that causes an injustice to the complaining party." *State v. Phelps*, 329 S.W.3d 436, 443 (Tenn. 2010). The 1989 Sentencing Act expresses a burden of proof for revocation cases: "If the trial judge finds that the defendant has violated the conditions of probation and suspension by a preponderance of the evidence, the trial judge shall have the right by order duly entered upon the minutes of the court to revoke the probation and suspension of sentence . . . ." T.C.A. § 40-35-311(e)(1).

Upon a finding by a preponderance of the evidence that the defendant has violated the conditions of probation, the trial court may revoke the defendant's probation and "[c]ause the defendant to commence the execution of the judgment as originally entered, or otherwise, in accordance with § 40-35-310." *Id.*; *see also Stamps v. State*, 614 S.W.2d 71, 73 (Tenn. Crim. App. 1980). Following a revocation, "the trial judge may order the original judgment so rendered to be in full force and effect from the date of the revocation of the suspension, and that it be executed accordingly." T.C.A. § 40-35-310(a). In other words, "[t]he trial judge retains the discretionary authority to order the defendant to serve the original sentence." *Reams*, 265 S.W.3d at 430 (citing *State v. Duke*, 902 S.W.2d 424, 427 (Tenn. Crim. App. 1995)).

In the present case, the defendant admitted having used illegal substances in violation of the terms of his probation, which admission was sufficient to establish the violations by a preponderance of the evidence. Furthermore, the law is well-settled that the trial court does not abuse its discretion by choosing incarceration from among the options available after finding that the defendant has violated the terms of his probation.

Accordingly, the judgment of the trial court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE